## HOBSON, In Re.

Ohio Appeals, Second District, Franklin County.

No. 3786. Decided July 28, 1945.

W. S. Pealer, Columbus, and D. Curtis Reed, Columbus, for appellant.

Ralph J. Bartlett, Prosecuting Atty., and E. B. Paxton, Asst. Prosecuting Atty., Columbus, for appellee.

## OPINION

By MILLER, J.

This proceeding is an appeal upon questions of law from an order of the Juvenile Court, Branch of the Division of the Domestic Relations, Common Pleas Court, Franklin County, Ohio. Said order consists of the overruling of the motion to vacate a prior order of the Court making Robert Gene Hobson a ward of the Court and placing him permanently for adoption. The order also includes the overruling of an application for a hearing on said motion. The ultimate question is the custody of a minor.

The evidence in this case discloses that Ruth Hobson, a young lady now twenty years of age, was married in September of 1942 to Robert Aungst; that two days after their marriage her husband left for service in the United States Navy and has lived separate and apart from Ruth Hobson, the complainant, until very recently; that sometime during the spring or summer of 1943 said Ruth Hobson became pregnant with child as a result of her relations with another man; upon discovering her pregnancy she thought it was a disgrace to herself, to her unborn child and to her husband, who was in the service, and it was desired by her that something be done to prevent this disgrace. She consulted an attorney and it was at his suggestion that she came to the Florence Crittenden Home at Columbus, Ohio, a maternity home authorized by statute to take care of such cases. She was nearly six months pregnant when she arrived, and remained there until several weeks after the child was born. It was her desire to give up her baby while at the Crittenden Home, because she did not desire to take it back into the

community where her family lived and where she and her husband were known.

On the 21st day of February, 1944, she signed an affidavit of dependency in the Common Pleas Court, Division of Domestic Relations, Franklin County, Ohio. She discussed the matter with Mrs. Mary Needham, an officer of the Court, gave her certain information and told her it was her desire to place the baby for adoption. Mrs. Needham took the matter before the referee of the Court, Miss Genevieve Taylor, who inquired of her if that was her desire, if she had reached this decision of her own free will, and whether or not she had been influenced in her wishing to give the baby away, by any person. She stated that she had not, and understood what she was doing. Miss Taylor told her that the child would be placed for adoption and that would be the last contact with the child. The referee then ordered her recommendations prepared by a stenographer, and several days later they were presented to the Court at which time said recommendation was approved and a journal entry prepared wherein said child was made a ward of the Court because of its dependency and was placed for adoption.

The following day her mother came to visit her and she told her that everything was finished and over. No effort was made by the said Ruth Hobson to regain the custody of her child until August, 1944, when she appeared with her attorney at court and demanded the return of her child.

On September 2, 1944, she filed application to vacate or modify said previous order wherein said child was made a permanent ward of the Court and placed for adoption.

The evidence disclosed by way of explanation of her failure to make this application at an earlier date that she had written to her husband, who was in the Navy, telling him of her pregnant condition. As a result of this the husband filed suit for divorce which was granted in March, 1944. The child had then been born about a month. Since then he has become reconciled with his former wife, and they have remarried, and it is now their desire to take the child into their own home.

A few days after the child was made a ward of the Court it was placed for adoption in a home approved by the Court, and has been and is there now. A petition was filed in the Probate Court of Franklin County, Ohio, for the adoption of the child.

The Court refused to vacate or modify its former order and this appeal is taken upon the following three grounds:

1. Said order is contrary to law in that it is based solely upon the alleged consent of a minor.

2. Said order is contrary to law in that it was entered upon findings and recommendations of a referee without the notice of the appellant required by §1639-21 GC.

3. Said order is not supported by, but is against the manifest weight of the evidence.

The action of the trial court was originated by the filing of a complaint by the mother under the provisions of §1639-23 GC, which provides that any person having knowledge of a child who appears to be dependent, etc., may file the complaint. A subpoena was issued to the mother of the child who appeared and was present at the examination as provided for by §1639-24 GC. The matter was heard before the referee and the child was committed to a private home by the Court for the purpose of adoption as provided in §1639-35 GC, upon the finding of the referee, which finding is as follows:

"At this time Ruth is before the Court to place her baby for adoption. She stated that she reached this decision of her own free will; that she had not been influenced in giving her baby away."

The jurisdiction of the Juvenile Court in this case was invoked under §1639-4 GC, which defines a "dependent child" as follows:

"1. Any child who is homeless or destitute or without proper care or support through no fault of its parents, guardian or custodian.

"2. Who lacks proper care or support by reason of the mental or physical condition of its parents, guardian or custodian.

"3. Whose condition or environment is such as to warrant the state, in the interest of the child, in assuming its guardianship."

The powers and duties conferred upon referees is provided for in §1639-21 GC. The pertinent language reads as follows:

"The judge may appoint referees, * *, who shall have the usual powers of masters in chancery cases, provided, however, in all such cases submitted to them by the court, they shall hear the testimony of witnesses and certify to the judge of such court their findings upon the case submitted to them,

together with their recommendation as to the judgment or order to be made in the case in question. The court, after notice to the parties in the case of the presentation of such findings and recommendation, may make the order recommended by the referee, * *."

This section requires that the referee submit to the judge its findings and also its recommendation. The findings were submitted as quoted above and from these findings we are of the opinion that all of the elements required by §1639-4 GC to constitute a dependent child are not included in this finding of the referee. The finding does not disclose that the child is homeless or destitute or without proper care or support. The findings do not disclose that the child lacks proper care or support by reason of the mental or physical condition of its parents, guardian or custodian. And, further, it does not disclose that the child's condition or environment is such as to warrant the state, in the interest of the child, in assuming its guardianship. The mere fact that a mother desires to place her baby for adoption is not enough to constitute dependency. The Court was, therefore, in error in making its finding of dependency of Robert Gene Hobson in February, 1944. No person or parent can give their consent to a finding of "dependency" for a child, but the requirements of §1639-4 GC, which defines a dependent child, must be found to exist.

The second assignment of error it that the order of the trial court was contrary to law in that it was entered upon findings and recommendations of the referee without the notice to the appellent required by §1639-21 GC. The record discloses that a copy of the findings and recommendation of the referee was not served upon the parties in the case, which in this case is the mother. The referee testified that she told the mother what her findings were and what the recommendation to the Court would be, although this was denied by the mother.

We are of the opinion that the findings and recommendations by the referee are required by statute to be in writing. The statute provides that referees shall hear the testimony of witnesses and certify to the judge their findings upon the case submitted to them, with the recommendations. Since the findings and recommendations so certified to the trial judge must be in writing, we think that the findings and recommendations, of which the parties shall have notice, shall likewise be in writing.

We are, therefore, of the opinion that the second assignment of error is also well taken. The judgment of the trial court is ordered reversed and the motion for a vacation of the original order is ordered sustained.

GEIGER, J., concurs in judgment.

HORNBECK, P. J. concurring:

I concur in the conclusion of the majority opinion that a finding of dependency here is not supported by the finding of the referee and there is insufficient basis in fact for an adjudication of dependency.

The statute contemplates that the referee take testimony touching the charge, make findings thereon and the Court may, either upon the findings alone, or, after taking further testimony enter judgment. We may assume that the referee took considerable testimony and it may be possible that the Judge heard additional evidence. However that may be, there is no substantial dispute in the facts which were developed fully upon the motion to vacate or modify the judgment.

Sec. 1639-21 GC providing for referees, defines their duties and powers and the authority of the Court. The referee by the statute is given "the usual power of a master in chancery cases". At common law a "master in chancery" was not identical with a referee. It is probable that the section contemplates that referees perform their duties much as referees who are under appointment in courts of equity. Such procedure contemplates a formal finding of the referee setting out the determinative facts and the conclusions of law, as to which objections or exceptions may be noted.

Testing the report of the referee here it is obvious that the fact that the mother was before the Court to place her baby for adoption could in no view of the controlling statute be an element of dependency.

From the facts appearing we have a mother and an illegitimate child. We have held in Smith v Privette, 13 Abs. 291, that the fact that a child is illegitimate does not in itself constitute it a dependent under the statute.

The first requirement of §1639-21 GC is not met in the factual development because the child was not homeless or destitute or without proper care or support through no fault of its parents, * * *. If it was homeless or destitute it was because of the fault of the parents.

Nothing can be claimed for the second or third paragraph of the section under the factual developments.

If a child is to be declared to be dependent because it is burdensome to the parent to care for it and unpleasant to bear the odium that attaches to the parenthood, then the State must assume a heavy burden and such procedure, no doubt, will be resorted to many times.

If a parent is able by reason of property or personal earnings to support his or her child, the law requires them to do so. If a situation arises where the parents are unable for any reason to support their own child, then it may be that the child could be declared to be a dependent.

The status which constitutes dependency relates to the child and not to its parent.

Our decision on the third assignment of error could well determine this appeal, but inasmuch as other errors are assigned I discuss them briefly.

I agree with Judge Miller in his conclusion as to the duty of the referee in giving notice to the parties of the findings and recommendations of the referee.

Obviously, if it is necessary only, in charging dependency or delinquency, to merely state that a child is dependent or delinquent, there should be, at some stage in the proceedings, a factual finding upon which the trial judge could properly adjudicate, as a matter of law, the dependency or delinquency of the child.

The first and second assignments test the sufficiency in law of the notice to the mother of the child who, at the time of the proceedings and at the time of the order, was a minor.

The basic difficulty with the proceeding under consideration is that the Court was dealing with a minor who in law is presumed not to be qualified to determine for herself her own legal rights. Here was a mother in a dire extremity, and as she was a minor the law, to protect her, places certain safeguards around her.

It is held in **Lewis v Reed, 117 Oh St 152, Ex Parte Province, 127 Oh St 333** and quite recently in **In re Corey, 145 Oh St 413**, that under §1369-24 GC, the parents of a minor child or children are entitled to notice, actual or constructive, in a proceeding instituted in the Juvenile Court upon the complaint of dependency of such child or children, and that unless such notice is given to the parents, the jurisdiction of such court does not attach and a judgment of commitment rendered in such proceedings is void.

In **Rarey v Schmidt, 115 Oh St 518**, the court is more explicit and holds that **service**, actual or constructive, must

be had upon such parent before a Juvenile Court has jurisdiction to declare such child a dependent child. (Emphasis ours.) Judge Robinson writing the opinion, at page 521 says:

"While the section (§1648 GC) as a whole is inartfully drawn, it quite definitely appears that before the jurisdiction of the court to deal with the child attaches one of three classes of persons—the parent, the guardian, or the person having custody of the child—shall have legal notice of the pendency of the complaint."

There is no compliance with this requisite of the statute in the instant case. The only written notice which was served upon the mother was a paper writing noted as "Summons" which, however, is nothing more than a subpoena, to appear and testify "at a hearing".

But, as we understand the claim of appellees, friends of the Court, it is that the mother gave her consent to the proceedings. There is no question that this is the fact if she had the capacity to do so, because she made the affidavit of dependency and testified and was present during the proceedings. The determinative question is, was she capable of consenting to the proceedings and the order. If so, clearly she is bound.

In a note to Herr v Humphrey, (Ky), 121 A. L. R. 957, it is said:

"In every jurisdiction in which the question has been raised it has been held that an infant can neither acknowledge nor waive the regular service of process upon him."

If the minor could not waive the service of process or citation, then it was essential that it be made as provided by the statute. It is manifest that the only purpose that a citation on a party can serve is to enable that party to make a defense and to protect his rights. If the parent is a minor, as in the instant case, then, of course, the service must be made as would be proper in an action against the minor.

The question of the effect of the failure of the court to name a guardian ad litem for the mother is raised only inferentially in this proceeding although it was raised directly in the habeas corpus suit.

Sec. 11252 GC makes it mandatory that the defense of a minor be made by a guardian ad litem, and there are a number of cases in Ohio holding, and our statute provides, that a

guardian shall not be named until after proper service is had upon the minor.

In **21 O Jur 910**, it is said:

"There is in contemplation of law a complete parallel between a lunatic and an infant defendant."

As early as **Sturges v Longworth, 1 Oh St 544**, it is held in the third syllabus:

"It is error for the court to decree against a lunatic, without an answer from his guardian ad litem."

Judge Caldwell in the opinion at page 550 says:

"So far as the lunatic is concerned, he is not capable of looking after his own interests, no matter how he may be brought into court. He can do nothing toward his defense, nor can he, by any act, conclude his rights; his defense must be entrusted to others."

And at page 552:

"The duty imposed on the court, the lunatic being unable to defend himself, is, that they must see, before they proceed to dispose of his rights, that he is represented in court by some competent person, who is bound to make such defense as the nature of the case will permit, and to see that such representative performs his duty in the premises."

In the cited case the Court held that the incompetent's interest was prejudiced because his guardian ad litem, duly appointed and qualified, did not formally answer.

In **Durst v Griffith, 43 Oh Ap 44**, the Court held, Judge Mauck writing the opinion:

"A minor complainant in a bastardy proceeding may institute the proceeding without the intervention of a next friend and no guardian ad litem is required for a minor defendant."

There is analogy between a bastardy proceeding and a dependency proceeding and we recognize the high quality of a decision by Judge Mauck. However, there is apparent

conflict between this adjudication and the Supreme Court cases which we have heretofore cited.

Likewise, **Bleier v Superintendent, 13 Oh Ap 69,** seems to be in partial conflict with the Supreme Court cases. The Hamilton County Court of Appeals held that service of citation upon the parent of a child in a proceeding under §§1647 and 1648 GC is not a condition precedent to jurisdiction over the child. However, Judge Shohl at page 74 of the opinion calls attention to another pertinent question which is presented in the instant case, in this language:

"The petitioner is entitled to a day in court to have a determination of his rights regarding the custody of his children."

Citing **House of Refuge v Ryan, 37 Oh St 197.**

The Court makes distinction between the jurisdiction of the Juvenile Court to make determination as to the dependency or delinquency of a minor child and the further power to take custody from a parent, without granting to that parent his day in court. So here, even though it be conceded that the matter of the dependency of the child was one of primary concern between the state and the child, even so, when the Court made an order affecting its custody, the mother was entitled to her day in court. Especially is this true inasmuch as she is a minor. She had not the capacity in law to waive her rights or consent to a custodial order against her. The right of a parent to the custody of her own child is definite and certainly as valuable as a property right. It would not be questioned that an order affecting the property of a minor could not effectively be made without representation of the minor by a guardian or guardian ad litem.

If the controlling section be construed to require legal service upon a minor parent as a prerequisite to any order of dependency against her child then such minor is accorded due process of law and such construction should be given to the statute, if possible. If service is not provided, then it is indeed doubtful if the minor would be accorded due process which would require the holding that the controlling section of the Code was unconstitutional, and service alone upon a party who is not sui juris would be a futile act.

39 Am. Jur., 603:

"A parent clearly cannot be deprived of his parental rights without due process of law."

And that,

"While a child is not the property of his parents, yet the interest which a parent has in the nurture of his own off-spring transcends property rights. This is particularly true of the mother, who brings the child into the world."

It is our best judgment that the Court was without authority to make the custodial order here without serving the mother, as a minor, and making it possible that she be represented by some one qualified and authorized to represent her. Inasmuch as neither was done, in probability, the Court was without any jurisdiction but certainly without juris-dicition to make the order taking the custody of the minor from his mother.

Determination of the essentials of dependency in this case is made upon an interpretation of the controlling legal principles as related to the Juvenile Code as written. The Code represents the legislative judgment of public policy on the subject. If public policy is to be changed it is for the Legis-lature and not the courts, because we take the law as we find it.

This case is unusual in that it must be conceded that at the time the original order was made, everybody involved acted in the best of good faith. The mother greatly desired that her child be placed for adoption. In this attitude she was prompted by a desire to save herself and her husband disgrace. The Judge and the Referee made every effort to work out a solution which seemed to be practical and for the best interests of all concerned. The Thorpes likewise acted in a commendatory manner in offering to adopt the child, (although they were put on notice that the mother was assert-ing her rights) and no doubt have become greatly attached to him.

It the Court had power independent of statute much could be said in favor of supporting that which was accom-plished by the dependency order. The outstanding fact in this case is that the proceedings involved a minor parent whose rights, we believe, were as we have heretofore stated them to be.

The judgment must be reversed.